**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

EMMA ELISHA BROWN,

        Plaintiff,

v.                                                    Case No. 6:22-cv-6-JRK

KILOLO KIJAKAZI,
Acting Commissioner of Social
Security,

        Defendant.

---

**OPINION AND ORDER**[1]

### I.  Status

Emma Elisha Brown ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claim for supplemental security income ("SSI"). Plaintiff's alleged inability to work is the result of "back, leg and neck problems" as well as headaches, falling on her "finger," "face swelling," and "mental" issues. Transcript of Administrative Proceedings (Doc. No. 15; "Tr." or "administrative transcript"), filed April 1, 2022, at 115, 123-24, 232, 246 (some capitalization omitted). Plaintiff protectively filed an application for SSI on October 10, 2012, alleging a

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 14), filed April 1, 2022; Reference Order (Doc. No. 18), entered April 7, 2022.

disability onset date of April 20, 2006.[2] Tr. at 199-204. The application was denied initially, Tr. at 115-20, 121,122, 135-40, and upon reconsideration, Tr. at 123-32, 133, 134, 145-49.

On March 25, 2015, an Administrative Law Judge ("ALJ") held a hearing, during which the ALJ heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). See Tr. at 46-114. On July 31, 2015, the ALJ issued a decision finding Plaintiff not disabled through the date of the decision. See Tr. at 15-21, 28-40, 1310-22 (duplicates).

Thereafter, Plaintiff sought review of the decision by the Appeals Council and submitted three pages of prescriptions as additional evidence. See Tr. at 2 (Appeals Council order), 10 (request for review), 6-7, 1443-45 (prescriptions and duplicates). On November 1, 2016, the Appeals Council denied Plaintiff's request for review, Tr. at 1-4, 1328-31 (duplicate), thereby making the ALJ's Decision the final decision of the Commissioner.

Plaintiff initiated a case in this Court by filing a Complaint seeking review of the Commissioner's final decision. See Tr. at 1333. On February 27, 2018, this Court entered an Order reversing the matter and remanding it to the Commissioner for further proceedings. Tr. at 1333-46; see also Tr. at 1347

---

[2] Although actually completed on October 18, 2012, see Tr. at 199, the protective filing date for the SSI application is listed elsewhere in the administrative transcript as October 10, 2012, see, e.g., Tr. at 115, 123.

(Judgment). On remand, the Appeals Council entered an Order on April 29, 2019 remanding the matter to the ALJ consistent with the Court's Order. Tr. at 1352-54.

On remand, the ALJ convened a hearing on August 12, 2020 that was continued because Plaintiff did not appear. Tr. at 1302-06. The ALJ then held a hearing on January 6, 2021,[3] during which the ALJ heard from Plaintiff, who was represented by counsel; from a VE; and from Shana Brito, Plaintiff's friend. Tr. at 1256-1301. The ALJ issued a Decision on February 19, 2021 finding that Plaintiff was not disabled through the date of the Decision. Tr. at 1232-48.

Plaintiff requested review of the ALJ's Decision. Tr. at 1226-27 (request for review and cover letter). The Appeals Council declined to assume jurisdiction, Tr. at 1220-21, making the ALJ's Decision the final Decision of the Commissioner. On January 4, 2022, Plaintiff commenced this action under 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

The issues on appeal are: 1) "[w]hether the ALJ did not substantially comply with and/or fully address the issues referenced in the Order of [this Court] and/or erred in failing to give substantial weight to the o[p]inions of [John] Ortolani, [M.D., Plaintiff's treating pain management physician]"; 2)

---

[3] The hearing was held via telephone, with Plaintiff's consent, because of extraordinary circumstances presented by the COVID-10 pandemic. Tr. at 1232, 1260, 1399.

"whether the ALJ erred in failing to present to the [VE] the full range of [] Plaintiff's . . . restrictions, when finding [] Plaintiff capable of performing light work, and erred in relying on the opinion of the [VE]"; 3) "whether the findings of the ALJ as to [] Plaintiff's mental health limitations were supported by . . . substantial evidence . . . and/or the ALJ failed in the duty . . . to fully develop the record"; 4) "whether the ALJ failed in the . . . duty to fully develop the record"; and 5) "whether the ALJ erred in failing to consider the testimony of the lay witness." Joint Memorandum (Doc. No. 28; "Joint Memo"), filed August 8, 2022, at 15, 30, 35, 39, 41 (emphasis and capitalization omitted).

After a thorough review of the entire record and consideration of the parties' arguments, addressing the third issue, the undersigned finds that the Commissioner's final decision is due to be reversed and remanded for reconsideration of Plaintiff's mental impairments and related opinions. On remand, reconsideration of these matters may impact the SSA's other findings. For this reason, the Court need not address the remaining issues. See Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (declining to address certain issues because they were likely to be reconsidered on remand); Demenech v. Sec'y of the Dep't of Health & Human Servs., 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (concluding that certain arguments need not be addressed when the case would be remanded on other issues).

## II.   The ALJ's Decision

When determining whether an individual is disabled,[4] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. § 404.1520; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step inquiry. See Tr. at 1234-48. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since October 10, 2012, the application date." Tr. at 1234 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following

---

[4] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

severe impairments: disorders of the spine; right knee degenerative joint disease/osteoarthritis; and depressive, bipolar, and related disorders." Tr. at 1234 (emphasis and citation omitted). At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 1235 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can perform] light work as defined in 20 CFR [§] 416.967(b) with limitations. [Plaintiff] can lift and carry 20 pounds occasionally and 10 pounds frequently. [Plaintiff] can stand/walk for 6 hours and sit for 6 hours in an 8- hour workday with normal breaks. [Plaintiff] can never climb ladders, ropes, or scaffolds. [Plaintiff] can balance, stoop, kneel, crouch, crawl, and climb ramps and stairs no more than occasionally. [Plaintiff] is right hand dominant, and can frequently handle (gross manipulation), finger (fine manipulation), and feel no more than frequently. [Plaintiff] must avoid concentrated exposure to the use of moving machinery and must avoid all exposure to unprotected heights. [Plaintiff] is limited to occupations which do not require complex written or verbal communication, frequent verbal communication, or frequent telephone communication. Work is limited to simple, routine, and repetitive tasks performed in a work environment free of fast-paced production requirements involving only simple work-related decisions and routine workplace changes. [Plaintiff] is limited to no interaction with the public, and only occasional interaction with coworkers and supervisors.

Tr. at 1236 (emphasis omitted).

At step four, the ALJ found that Plaintiff "has no past relevant work." Tr. at 1247 (emphasis and citation omitted). The ALJ then proceeded to the fifth and final step of the sequential inquiry. Tr. at 1247-48. After considering Plaintiff's age ("28 years old. . . on the date the application was filed"), education ("limited education"), lack of work experience, and RFC, the ALJ relied on the VE's testimony and found "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 1247, such as "Laundry Sorter," "Hospital Products Assembler," and "Mail Sorter," Tr. at 1248 (some emphasis and capitalization omitted). The ALJ concluded Plaintiff "has not been not under a disability . . . since October 10, 2012, the date the application was filed." Tr. at 1248 (emphasis and citation omitted).

### III.   Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. § 405(g). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.   Discussion

Plaintiff challenges the ALJ's findings regarding her mental functional limitations. Joint Memo at 35-37. In making this challenge, Plaintiff notes that the ALJ gave significant weight to the opinion of J. Jeff Oatley, Ph.D., an examining psychologist, from December 2013 (see Tr. at 784-86), but gave only little weight to the opinion of Jerry Valente, Ph.D., J.D., also an evaluating psychologist, from August 2020 (see Tr. at 1595-1601). Joint Memo at 35-36. Dr. Oatley assessed only mild limitations. Tr. at 785-86. Dr. Valente assessed mostly marked, with a few moderate, limitations. Tr. at 1599-1600.

Plaintiff contends it was not appropriate to rely on an examination conducted so early in the process and to the exclusion of Dr. Valente's opinion. Joint Memo at 35-36. In support, Plaintiff indicates that Dr. Oatley's examination occurred before multiple psychologically-significant events including: a finding in conjunction with criminal proceedings that she was incompetent to proceed to trial; commitment to the Florida State Hospital for restoration and treatment; and the deaths of her grandmother and mother. Id. at 36. According to Plaintiff, her mental limitations "are more severe than referenced by the ALJ." Id.[5] Responding, Defendant argues the ALJ rightly relied on Dr. Oatley's 2013 examination, together with the rest of the mental health evidence. Id. at 38. Defendant hardly addresses the mental limitation findings other than to briefly summarize the mental health evidence and conclude it "supports the mental limitations included in the RFC and hypothetical question to the VE." Id. at 29 (citation omitted).

---

[5] Alternatively, Plaintiff contends the ALJ abrogated the duty to develop a full and fair record because the ALJ did not order a more recent examination. Joint Memo at 37. The Court need not address this argument.

"Medical opinions[6] are statements from [physicians or other] acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Acceptable medical sources include licensed physicians, licensed psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. § 404.1502(a).[7]

The Regulations establish a hierarchy among medical opinions that provides a framework for determining the weight afforded each medical opinion. See 20 C.F.R. § 404.1527. Essentially, "the opinions of a treating physician are entitled to more weight than those of a consulting or evaluating health professional," and "[m]ore weight is given to the medical opinion of a source who examined the claimant than one who has not." Schink v. Comm'r of

---

[6] On January 18, 2017, the SSA revised the Rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844, 5,844 (January 18, 2017); see also 82 Fed. Reg. 15,132 (Mar. 27, 2017) (amending and correcting the final Rules published at 82 Fed. Reg. 5,844). Because Plaintiff filed her claim before that date, the undersigned cites the older Rules and Regulations (that are applicable to the date the claim was filed).

[7] For claims filed on or after March 27, 2017, acceptable medical sources also include licensed audiologists, licensed Advanced Practice Registered Nurses, and licensed Physician Assistants. 20 C.F.R. § 404.1502(a)(6)-(8).

Soc. Sec., 935 F.3d 1245, 1259, 1260 n.5 (11th Cir. 2019). Further, "[n]on-examining physicians' opinions are entitled to little weight when they contradict opinions of examining physicians and do not alone constitute substantial evidence." Id. at 1260 (citing Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987) (per curiam)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. § 404.1527(c)(2)-(5); see also 20 C.F.R. § 404.1527(f); Walker v. Soc. Sec. Admin., Comm'r, 987 F.3d 1333, 1338 (11th Cir. 2021) (citation omitted); McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citation omitted) (stating that "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists").

An ALJ is required to consider every medical opinion. See 20 C.F.R. § 404.1527(c) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham v.

Schweiker, 660 F.2d 1078, 1084 (5th Cir. 1981) (citation omitted); see also 20 C.F.R. § 404.1527(c)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz, 825 F.2d at 279); Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440.

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1545(a)(5). In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also Pupo v. Comm'r, Soc. Sec. Admin., 17 F.4th 1054, 1064 (11th Cir. 2021) (citing Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1268 (11th Cir. 2019)); Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)).

Here, to begin, early in the Decision when addressing the mental functioning, the ALJ omitted critical evidence in discussing the four broad

functional areas of mental functioning set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1, otherwise known as the "paragraph B criteria." See Tr. at 1235-36 (ALJ's discussion of paragraph B criteria). Consequently, the undersigned cannot uphold as supported by substantial evidence the ALJ's findings of "moderate limitation" in the areas of "understanding, remembering or applying information"; "interacting with others"; "concentrating, persisting, or maintaining pace"; and "adapting or managing oneself." Tr. at 1235-36.

Particularly regarding interacting with others, the ALJ did not recognize that Plaintiff rather consistently has appeared to mental health providers to be agitated, angry, hostile, or irritable. See Tr. at 1235-36; see also, e.g., Tr. at 1467, 1475, 1477, 1487, 1494, 1499-1500, 1596, 2039, 2046, 2050. This at least one time did improve with interventions while Plaintiff was hospitalized for inpatient treatment, Tr. at 1502, but on the whole, the evidence supports Dr. Valente's finding that Plaintiff "presented as volatile, anxious, and highly reactive." Tr. at 1596.

Additionally, in terms of the medical evidence relied upon to make the paragraph B criteria findings, the ALJ discussed only Dr. Oatley's December 2013 examination and records from 2020 forward. Tr. at 1235-36. The ALJ omitted any reference in these findings to the mental health evidence between 2013 and 2020, including differing reports and opinions in Plaintiff's criminal proceedings on competency. See Tr. at 1235-36; compare Tr. at 1486-91 (Roger

Davis, Ph.D., opines Plaintiff is malingering and competent to proceed), with Tr. at 1492-96 (Stephen L. Bloomfield, Ed.D., opines Plaintiff is not malingering, is not competent to proceed, and meets criteria for involuntary commitment because she is danger to herself). The ALJ did not discuss evidence in these findings of Plaintiff's commitment to Florida State Hospital on July 10, 2018 for restoration, and subsequent examination findings that Plaintiff's competency had been restored by October 24, 2018. See Tr. at 1235-36; see also Tr. at 1497-1503.

Nor did the ALJ recognize in making the paragraph B criteria findings documentation of Plaintiff appearing for treatment on November 26, 2018 endorsing mood swings and her cat talking to her, Tr. at 1540, or other hallucinations documented in the records, Tr. at 2039, 2046, 2050. The ALJ also did not recognize in making the paragraph B criteria findings that in November 2018 through at least January 15, 2019, Plaintiff was living in her grandmother's home without electricity or water.[8] Tr. at 1540, 1552.[9]

Further, while the ALJ did discuss some of Plaintiff's testimony and recognized that a friend comes by to help Plaintiff on a daily basis, see Tr. at 1235-36, the ALJ did not recognize anywhere in the Decision the more

---

[8] The water and electricity were restored by June 2019. Tr. at 2045.

[9] The ALJ did recognize some of this evidence, particularly most of the evaluation findings, later in the Decision. Tr. at 1237-46.

compelling aspect of both Plaintiff's and her friend's testimony that is indicative of Plaintiff's ability to adapt or manage herself: Plaintiff's handling of her mother and grandmother passing away. Tr. at 1540. Plaintiff sometimes does not appear to acknowledge their deaths or otherwise believes she is talking with one or more of them. Tr. at 1276-78; see also Tr. at 1494. Plaintiff and her friend both testified she keeps her mother's ashes in her bed, without any box or container holding them. Tr. at 1278, 1289. When confronted by her friend about this, Plaintiff got angry. Tr. at 1289. Without the ALJ having addressed this or the other omitted evidence, the undersigned cannot find supported by substantial evidence the paragraph B findings.

When it came time to address Dr. Valente's opinion, the ALJ found it was entitled to "[l]ittle weight," among other reasons, because "the severity level opined by this consultative examiner is inconsistent with treatment records that establish generally mild and unremarkable findings." Tr. at 1245. In light of the other infirmities identified above, this finding needs to be reevaluated.

Later, the ALJ opined that with consistent "treatment compliance," Plaintiff does not experience significant ongoing abnormalities or difficulties, but this finding also needs to be reevaluated because there is conflicting evidence in the record about whether Plaintiff can afford her needed medications. See, e.g., Tr. at 1465 (Plaintiff's mom and grandmother, now deceased, were paying for some of her mental health treatment); Tr. at 1487

- 15 -

(Plaintiff cannot afford medications); Tr. at 2045 (Plaintiff reporting buying medications from someone but that he stopped selling them to her because she has no money); but see Tr. at 2060 (Plaintiff asking a mental health provider on November 19, 2020 for medication refill).

In sum, the matter is due to be reversed and remanded for reconsideration of the mental limitation findings, including the relevant opinion evidence.

## V. Conclusion

In light of the foregoing, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

(A) Reconsider the mental functioning findings and related opinion evidence;

(B) If appropriate, address the other issues raised by Plaintiff in this appeal; and

(C) Take such other action as may be necessary to resolve this claim properly.

    2.    The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on March 30, 2023.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of Record